## McLEAN v. SANDUSKY LUMBER & BOX CO.[1]

1. CONTRACTS—LOGS AND LOGGING.
   Under the terms of a contract providing for towing logs and for holding the defendant liable for safe delivery, it was improper to state in the charge that a cyclone or like disaster would relieve plaintiffs from the responsibility, in the absence of a claim by plaintiffs that they were so relieved.

2. SAME—NAVIGATION—SEASON—LOGS AND LOGGING.
   A contract stipulating that the plaintiffs should tow all logs of the defendant, at the time and from the place which the defendant should direct, would not bind the plaintiffs to tow logs in the face of dangerous weather.

3. EVIDENCE—JUDICIAL NOTICE—SEASONS.
   The court will take judicial notice that logs cannot be towed in weather which would not prevent the operation of steamers and sailing vessels, and that the towing of logs may have to be abandoned before the close of navigation.

4. SAME—CUSTOMS AND USAGES—LOGS AND LOGGING.
   A local custom of closing the season for towing logs before the end of navigation may be considered in construing such towing contract.

5. NEGLIGENCE—LOGS AND LOGGING—TOWAGE CONTRACT.
   Where the party towing logs which were lost in a storm brought an action to recover the compensation agreed upon, and the defendant claimed recoupment, it was error to refuse a request to charge that the plaintiffs should have used all diligence to secure the logs again.

Error to Chippewa; Steere, J. Submitted February 17, 1910. (Docket No. 69.) Decided March 5, 1910.

Assumpsit by Alexander B. McLean and another against the Sandusky Lumber & Box Company for work and labor. A judgment for plaintiffs is reviewed by defendant on writ of error. Reversed.

*Warner & Sullivan*, for appellant.

*John W. Shine*, for appellees.

[1] Rehearing denied May 7, 1910.

Hooker, J.    The parties to this cause made a written contract, as follows:

"This agreement, made and entered into this 26th day of April, 1908, by and between A. B. McLean, of Sault Ste. Marie, Ontario, first party, and Woolworth Land & Lumber Company, of Sault Ste. Marie, Michigan, second party, witnesseth: In consideration of the mutual promises hereinafter contained, the parties hereto agree as follows: The first party agrees to tow all timber and boxwood on Canadian shores owned by second party and deliver same into booms of second party at the mill at West Neebish owned and operated by second party. First party shall furnish all towing booms at his own expense. Second party shall deliver timber into towing booms of first party wherever such timber may be found, and it is hereby mutually agreed, if there is not sufficient timber at one point for a tow, first party shall move to other places where timber is located and make all necessary moves to fill towing booms and without additional expense or charge to second party. First party shall be held responsible for the safe delivery of timber into booms belonging to second party at mill at West Neebish. Second party shall pay to first party thirty cents per cord for all timber and boxwood towed from Canadian points and delivered into booms at West Neebish; payment to be made on or before the 15th day of each month for all timber delivered the preceding month. First party shall do all towing at the time and from the place as directed by second party. In witness whereof, this contract has been executed in duplicate the day and year first above written."

The plaintiffs claim to have performed this contract and delivered the lumber with the exception of the last tow, and that this got away from them through the breaking of the boom in a storm; that they were ready to tow it after it was collected again, but defendant did not allow it, and had it done by others. Defendant asked compensation therefor by way of offset or recoupment. Defendant also claimed, and plaintiffs disputed, that some of the boxwood was not recovered, and the former asked compensation for this. The plaintiffs also claimed that this last tow was withheld until past the towing season, and

therefore the towing was at the risk of the defendant so far as the vicissitudes and dangers of navigation are concerned. We understand from the argument that plaintiffs offered testimony of a custom, which they assert to have been within the contemplation of the contract.

Defendant submitted two requests to charge which were refused. Three questions are argued by counsel for appellant, viz. :

"*First.* The charge of the court permitting the jury to exonerate the plaintiffs from responsibility for the loss of timber 'through some great catastrophe, * * * some cyclone,' or something of that nature.

"*Second.* The refusal of the court to give defendant's request to charge No. 6, or to define the duty of plaintiffs with reference to the lost raft.

"*Third.* Leaving to the jury, under the contract, the question as to what constitutes a towing season, and submitting as a question of fact whether or not the parties, in making this contract, contemplated a shorter towing season or the entire season of navigation."

The first question arises upon the following instruction:

"The contract also provides that the first party shall be held responsible for the safe delivery of the timber into the booms belonging to second party at the mill at West Neebish. Now, that provision, in effect, makes the plaintiffs insurers of the delivery of this timber. The language is plain, the parties are presumed to have entered into the contract fully understanding it, and, in the opinion of the court, that holds the plaintiff responsible for the safe delivery of this timber into the booms belonging to the second party; the plaintiff assuming all the ordinary hazards of navigation and of towing logs in the sheltered waters in which the operation was to be carried on. It is quite likely, under the broad principle of law, which we have, that no person can be held responsible for failure and misfortune which comes through acts of God and public enemies; that if some great catastrophe had befallen this enterprise, if some cyclone had swept over one of these rafts and scattered it, if something of that nature had arisen against which all human effort is powerless, the plaintiff would be exonerated from this responsibility, but, in the absence of that, that is, in effect, a guaranty

to deliver this timber safely into the boom at West Nee-bish."

We are of the opinion that, in the last paragraph, the court added an unnecessary limitation on his construction of the obligation to deliver, from which the jury might find that plaintiffs were exonerated from the loss by the breaking of the boom in a storm. So far as we can discover, there was no claim of this kind in the case. The jury would be likely to think the instruction was to have some bearing on the case, and there is reason to fear that it may have been injurious to defendant's case.

Counsel contend that the writing explicitly gave the defendant the right to arbitrarily require the plaintiffs to tow logs at any time while navigation is open. Counsel himself, by this very statement, recognizes the necessity of recognizing a limitation upon the unqualified right to require towing, at a season when towing cannot be done by reason of ice, and we have no reason to believe that such right would be limited to a time when it was barely possible. Certainly the contract was not intended to give him the right to require plaintiffs to attempt to tow logs in the face of a dangerous gale, or in weather so threatening as to make it foolhardy to attempt it. We may take judicial notice that there is much weather when steamers and sailing vessels may be operated with safety when it would be futile to attempt to tow logs, and that there may be a time before navigation is usually abandoned when the towing of logs would be hazardous, and after all attempts to tow logs have been abandoned. Upon proof of a general and uniform custom in that regard in the locality, a jury might well find when that time is, and conclude, as the court should do on undisputed facts, that the contract was intended to recognize such a limitation.

In 2 Parsons on Contracts (9th Ed.), p. 688, it is said:

" A custom which may be regarded as appropriate to the contract and comprehended by it, has often very great influence in the construction of its language. The general reason of this is obvious enough. If parties enter in-

to a contract, by virtue whereof something is to be done by one or both, and this thing is often done in their neighborhood, or by persons of like occupation with themselves, and is always done in a certain way, it must be supposed that they intended it should be done in that way. The reason for this supposition is nearly the same as that for supposing that the common language which they use is to be taken in its common meaning. And the rule that the meaning and intent of the parties govern, wherever this is possible, comes in and operates. Hence an established custom may add to a contract stipulations not contained in it, on the ground that the parties may be supposed to have had these stipulations in their minds as a part of their agreement, when they put upon paper or expressed in words the other part of it. * * * So custom may control and vary the meaning of words; giving even to such words as those of number a sense entirely different from which they commonly bear, and which indeed by the rules of language and in ordinary cases would be expressed by another word."

To this we may add that, the more unnatural and unjust a strict construction of the contract, the more probable the intent that a prevailing custom which avoids the hardness of the contract was in contemplation, and such custom may be held a part of the contract, unless the express terms of the contract clearly negative the intent.

In *Hinton* v. *Locke*, 5 Hill (N. Y.), 437, Bronson, J., said:

"Usage can never be set up in contravention of the contract; but, when there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates; and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties."

The effect in this case would be to add to the provision "first party shall do all towing at the time and from the place, as directed by second party," the words "during the season for towing logs." We are of the opinion, therefore, that it was proper to prove the custom as to the

season of navigation, and to hold that the contract was made in contemplation of performance within the season commonly devoted to the towing of logs, which may be shorter than that for general navigation. It was proper, therefore, to leave that question to the jury, and not error to refuse the fifth request.

The sixth request certainly stated the correct rule, and we think that the charge as given did not fully state it, though it was doubtless so intended, and was probably so understood.[1]

If we could say with certainty that the last tow occurred after the close of the towing season, and, as plaintiffs claim, could also say that the plaintiffs attempted it only upon the consent of defendant to assume the dangers of navigation, we could treat the reference to cyclones, etc., as harmless, and the sixth request as properly refused, and affirm the case; but we cannot say, from the record, that these things were conclusively established, the evidence not being returned, and the charge failing to so state, and, on the contrary, treating these as disputed questions.

The judgment is reversed, and a new trial ordered.

Moore, McAlvay, Brooke, and Stone, JJ., concurred.

---

[1] 6th Request: "It was their duty to use all diligence to secure the wood again."—Reporter.